ORIGINAL

EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
JENNIFER CHOU (Cal. Bar No. 238142)
Assistant United States Attorney
Violent & Organized Crime Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6482
     Facsimile: (213) 894-3713
     E-mail:    jennifer.chou@usdoj.gov

Attorneys for Applicant
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER: (1) AUTHORIZING THE INSTALLATION AND USE OF A PEN REGISTER AND A TRAP AND TRACE DEVICE AND (2) AUTHORIZING RELEASE OF SUBSCRIBER INFORMATION | No. M 16 01106<br><br>APPLICATION<br><br>(UNDER SEAL) |

A.  INTRODUCTION

Jennifer Chou, an Assistant United States Attorney for the Central District of California, hereby applies to the Court for an order:

1.  Pursuant to 18 U.S.C. §§ 3122 and 3123, authorizing the installation and use of a pen register and trap and trace device[1] on the following telephone number[2]:

---

[1] A "pen register" is a "device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, provided, however, that such information shall not include the contents of any communication . . ." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming

a.   **(818) 457-2659**, a cellular telephone issued by MetroPCS,[3] and believed to be used by MARIO ALBERTO MIRANDA, a.k.a. "Las," a.k.a. "Last," a.k.a. "Ultimo" ("MIRANDA") (hereinafter the **"Subject Telephone Number"**).

2.   Pursuant to 18 U.S.C. §§ 2703(c)(1)(B) and 2703(d), directing electronic service providers to disclose upon oral or written request by Special Agents and Task Force Officers of the FBI (the "Investigating Agency"):

a.   Records or other information identifying subscribers or customers (but not including the contents of communications or toll records), namely, subscriber name, address, date of birth, social security number, driver's license (state and number), contact names and numbers, employment information, method of payment, length of service, and type of service utilized, for all published, non-published, listed, or unlisted numbers, dialed or otherwise transmitted to and from the **Subject Telephone Number**;

---

electronic or other impulses which identify the originating number" or other identifiers "reasonably likely to identify the source of a wire or electronic communication, provided, however, that such information not include the contents of any communication.  18 U.S.C. § 3127(4).

[2] Section 3123, as amended (P.L. 107-56 (2001)), empowers courts to authorize the installation and use of pen registers and trap and trace devices in other districts.  Section 3123(a)(1) provides that the court may enter an order authorizing a pen register or trap and trace device "anywhere within the United States. . . ."  Moreover, Section 3127(2)(A) now defines a "court of competent jurisdiction" as "any district court of the United States (including a magistrate judge of such a court) . . . having jurisdiction over the offense being investigated."  18 U.S.C. § 3127(2)(A).

[3] The Investigating Agency obtained the **Subject Telephone Number** from a confidential source.  Subscriber information has been requested but not yet received.

2

   b. All changes (including additions, deletions, and transfers) in service regarding the **Subject Telephone Number** to include telephone numbers and subscriber information (published, non-published, listed, or unlisted) associated with these service changes;

   c. Records or other information pertaining to subscribers or customers including call detail records (to include cell site/sectors)[4] from May 1, 2016, to the present (but not including the contents of communications) for the **Subject Telephone Number**.

B. CERTIFICATION FOR A PEN REGISTER AND A TRAP AND TRACE DEVICE PURSUANT TO 18 U.S.C. §§ 3122 AND 3123

  In support of this application, I state the following:

  1. I am an "attorney for the Government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure, and therefore, pursuant to 18 U.S.C. § 3122, may apply for an order authorizing the installation and use of pen registers and trap and trace devices.

  2. I certify that the information likely to be obtained from the pen register and trap and trace devices on the **Subject Telephone Number** is relevant to an ongoing criminal investigation being conducted by the Investigating Agency in connection with possible violations of federal criminal statutes, including 21 U.S.C.

---

[4] "Call detail records" are similar to toll records, namely historical (i.e., past) telephone records of telephone activity, usually listing outgoing calls and date, time, and duration of each call. However, "call detail records" is the term used when referring to historical toll records of cellular telephones rather than hardline telephones. Unlike toll records, however, call detail records also include a historical record of incoming calls and the historical cell site/sector(s) of the cellular telephone during each call.

§§ 841(a)(1) and 846 (conspiracy to distribute controlled substances), and 18 U.S.C. §§ 1962(c) and (d) (conspiracy to conduct the affairs of a RICO enterprise), by MIRANDA, Tony Moreno, a.k.a. "Chango" ("MORENO"), and others known and unknown ("Targets").

3. Therefore, based upon the above Certification,[5] and pursuant to 18 U.S.C. §§ 3122 and 3123, I request that the Court issue an order authorizing:

a. The installation and use of a pen register anywhere in the United States to record or decode dialing, routing, addressing, or signaling information (including "post-cut-through dialed digits"[6]) transmitted from the **Subject Telephone Number**, to

---

[5] Section 3122 "was not intended to require independent judicial review of relevance; rather, the reviewing court need only verify the completeness of the certification." In re United States, 10 F.3d 931, 935 (2d Cir. 1993) (citing S. Rep. No. 541, 99th Cong., 2d Sess. 47 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3601); see also United States v. Fregoso, 60 F.3d 1314, 1320 (8th Cir. 1995) (holding that the judicial role under Section 3123(a) is ministerial in nature because a proper application under Section 3122 mandates entry of the order); Brown v. Waddell, 50 F.3d 285, 290 (4th Cir. 1995) (Section 3122 does not require the government to establish probable cause to obtain a pen register or trap and trace device); United States v. Newman, 733 F.2d 1395, 1398 (10th Cir. 1984) ("[N]o showing of probable cause — or even 'sufficient cause,' as defendant suggests — is necessary to justify authorization of a pen register.").

[6] "Post-cut-through dialed digits," also called "dialed digit extraction features," are any digits that are dialed from the **Subject Telephone Number** after the initial call setup is completed. For example, some post-cut-through dialed digits are telephone numbers, such as when a subject places a calling card, credit card or collect call by first dialing a long-distance carrier access number and then, after the initial call is "cut through," dialing the telephone number of the destination party. That final number sequence is necessary to route the call to the intended party and, therefore, identifies the place or party to which the call is being made. Under these circumstances, the "post-cut-through" digits are the type of information (i.e., "dialing, routing, addressing, or signaling" information) specifically authorized by the statute for capture. Post-cut-through dialed digits also can represent call content, such as when subjects call automated banking services and enter account numbers, or call voicemail systems and enter

4

record the date and time of such dialings or transmissions, and to record the length of time the telephone receiver in question is "off the hook" for incoming or outgoing calls, for a period of 60 days from the date the order is filed by the Court.

   b. The installation and use of a trap and trace device on the **Subject Telephone Number** anywhere in the United States to capture and record the incoming electronic or other impulses which identify the originating numbers or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication and to record the date, time, and duration of calls created by such incoming impulses, for a period of 60 days from the date the order is filed by the Court.

   c. That, pursuant to 18 U.S.C. § 3123(b)(1)(C), the requested installation and use of a pen register and trap and trace device permit the use of such a pen register and trap and trace device not only on the **Subject Telephone Number**, but also on any changed telephone number(s) subsequently assigned to an instrument bearing the same IMSI,[7] MEID, or ESN[8] as the **Subject Telephone**

---

passwords, or call pagers and dial call-back telephone numbers (which are considered numeric messages.) To the extent that additional digits that are content are received, the government will not use such information for any investigative purposes.

[7] IMSI is an acronym for "International Mobile Subscriber Identity." The IMSI is a unique non-dialable number allocated to each subscriber that identifies subscriber account information (as opposed to the physical telephone equipment) for certain cellular telephones. The IMSI number is unique to that subscriber, and is never re-assigned. Thus, if the target exchanges his cellular telephone for an updated model and also changes his telephone number, the IMSI will remain the same.

[8] ESN is an acronym for "Electronic Serial Number." The ESN uniquely identifies certain cellular telephones. MEID is an acronym

**Number**, or any changed IMSI/MEID/ESN subsequently assigned to the same telephone number as the **Subject Telephone Number**, or any additional changed telephone number(s) and/or IMSI/MEID/ESN, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the **Subject Telephone Number** within the 60-day period authorized by this order.[9]

    4.   Pursuant to 18 U.S.C. §§ 3123(a)(1) and 3123(b)(2), I further request that the Court direct that upon service of the order upon it, the local, long distance, and wireless carriers listed in the proposed order, any other communications service provider providing service to the **Subject Telephone Number**,[10] and any other

---

for "Mobile Equipment Identifier." The MEID uniquely identifies certain cellular telephones, and is being used by Verizon Wireless on new phones to replace the ESN.

    [9] Section 3123(b)(1)(C) has been amended to require the court to specify in the order "the attributes of the communications to which the order applies, including the number or other identifier . . . ." 18 U.S.C. § 3123(b)(1)(C). The account number, when combined with the same subscriber name for the **Subject Telephone Number** sufficiently specifies "the attributes of the communications to which the order applies, including the number or other identifier . . ." as required by § 3123(b)(1)(C). Cf. United States v. Duran, 189 F.3d 1071, 1083-86 (9th Cir. 1999) (holding interception of wire communications on a cellular telephone with a changed telephone number followed by a changed ESN was covered by the order authorizing the interception of wire communications even though the court order authorizing the wiretap only anticipated a changed telephone number but did not anticipate a changed ESN).

    [10] The reference to "another communication service provider" is necessary so that the court order is still effective in the event that the **Subject Telephone Number** is transferred to another carrier pursuant to "Local Number Portability" ("LNP"). LNP allows a telephone user to change his/her telephone company but still keep the same telephone number. However, to transfer (i.e., "port") a telephone number pursuant to LNP, the subscriber information must remain the same. Thus, this reference applies if the **Subject Telephone Number** is transferred (i.e., "ported") to another telephone carrier, but the telephone number and subscriber information remain the same.

person or entity providing wire communication service in the United States whose assistance may facilitate execution of the order, furnish the information, facilities, and technical assistance necessary to accomplish unobtrusively the installation and use of the pen register and trap and trace devices and with minimum interference with the services that are accorded the persons with respect to whom the installation and use is to take place, with compensation to be paid by the Investigating Agency for reasonable expenses directly incurred in providing such facilities and assistance.

    5.   I further request that the order direct the local, long distance, and wireless carriers, and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the order, to furnish the results of the pen register and trap and trace devices to Special Agents of the Investigating Agency as soon as practicable, on a continuing basis, 24 hours a day for the duration of the order.

C.    SPECIFIC AND ARTICULABLE FACTS ESTABLISHING REASONABLE GROUNDS TO BELIEVE THAT SUBSCRIBER RECORDS ARE RELEVANT AND MATERIAL TO AN ONGOING CRIMINAL INVESTIGATION PURSUANT TO 18 U.S.C. § 2703

    6.   Title 18, United States Code, Section 2703(d) provides that a court may issue an order authorizing disclosure of a record or other information pertaining to a telephone subscriber or customer (not including the contents of communications) when a government agency provides the Court with:

> [S]pecific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation.

The statute, by its own language, precludes holding the government to a higher standard of proof, such as probable cause. See Communications Assistance for Law Enforcement Act, Pub. L. No. 103-414 § 207(2), reprinted in 1992 U.S. Code Cong. & Admin. News 4292. The House Report reflected that "[t]his section imposes an intermediate standard to protect on-line transactional records. It is a standard higher than a subpoena, but not a probable cause warrant." See H.R. Rep. No. 103-827, at 31-32 (1994), reprinted in 1994 U.S.C.A.A.N. 3489, 3511-12.[11]

7. For the purposes of obtaining a court order for disclosure as described in 18 U.S.C. § 2703(c)(1), and in order to satisfy the requirements of 18 U.S.C. § 2703(d), government counsel, based on discussions with FBI Special Agent ("SA") Mario E. Roldan, hereby sets forth the following specific and articulable facts showing that there are reasonable grounds to believe that the records or other information identifying subscribers (but not including the contents of communications) for telephone numbers identified through the pen register and trap and trace device on the **Subject Telephone Number**, subscriber information associated with any service changes regarding

---

[11] Persons calling to and from the **Subject Telephone Number** do not have a Fourth Amendment privacy interest regarding their subscriber information. United States v. Fregoso, 60 F.3d 1314, 1321 (8th Cir. 1995) (rejecting defendant's challenge to court order permitting phone company to supply subscriber information "for the telephone numbers obtained from the pen register and the caller identification service," holding, "We agree with the magistrate judge's assessment that because this information is listed in phone books and city directories, and at a bare minimum revealed to the phone company to obtain telephone service, there can be no expectation that this information will remain private."). See Smith v. Maryland, 442 U.S. 735, 742-44 (1979) ("[A] person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.").

the **Subject Telephone Number**, and the records or other information pertaining to subscribers (but not including the contents of communications) for the **Subject Telephone Number** will be relevant and material to an ongoing criminal investigation:

      a. MIRANDA is a member of the Vineland Boys (VBS) criminal street gang. According to a FBI Confidential Human Source[12] ("CHS"), MIRANDA is a "shot-caller" (leader) in the VBS gang and is engaged in narcotics trafficking from a residence located at 12504 Bromwich Street, Pacoima, California. Working at the direction of the FBI, CHS has twice conducted controlled undercover purchases from MIRANDA, who at the time used telephone number 818-568-9592 ("MIRANDA's prior telephone #1") to coordinate and facilitate the narcotics transactions. Specifically, MIRANDA sold the CHS four ounces of methamphetamine on November 18, 2015, and four ounces of methamphetamine on December 1, 2015. MIRANDA has regularly called CHS to coordinate discussions regarding VBS gang business, including setting up meetings with gang members, discussing which gang members are in good standing, and executing orders from Tony Moreno, a.k.a. "Chango," a VBS leader currently incarcerated who communicates with MIRANDA and CHS using contraband prison cell phones. On January 28, 2016, the Honorable Suzanne H. Segal signed order No. 15-2095(A)-M, which authorized the use of a pen register and trap and trace

---

[12] CHS is a documented VBS gang member. CHS has provided reliable and credible information that has been independently corroborated by law enforcement in this investigation. CHS receives monetary compensation for cooperating in this investigation. CHS also gets law enforcement assistance for immigration benefits since he/she is illegally in the country and hopes to be able to stay in the country. CHS has a misdemeanor conviction for theft, for which he/she was sentenced to one day in jail and probation.

("PRTT") device on MIRANDA's prior telephone #1. Pen register data indicates that MIRANDA stopped using this number on or about January 26, 2016. On January 31, 2016, MORENO told CHS to call MIRANDA at 818-527-0949 ("MIRANDA's prior telephone #2"). CHS called MIRANDA at that number and confirmed MIRANDA was using that number. On February 19, 2016, the Honorable Alka Sagar signed order No. 16-351-M authorizing the initial use of a PRTT for MIRANDA's prior telephone #2 for 60 days. An extension was authorized on April 14, 2016 by the Honorable Andrew J. Wistrich in order No. 16-351(A)-M. Pen register data indicated there have been no outgoing calls from telephone 818-527-0949 since May 14, 2016. The service provider confirmed that the account for MIRANDA's prior telephone #2 was suspended on that date for lack of payment. According to CHS, on May 18, 2016 at approximately 12:11 p.m., CHS received a text message from the **Subject Telephone Number** that read, "call me." That same day at approximately 7:14 p.m., CHS dialed the **Subject Telephone Number** and the person who answered the call identified himself as "L," which CHS knows to be MIRANDA. From this unrecorded phone conversation, CHS confirmed MIRANDA is the user of the **Subject Telephone Number**. During this call, MIRANDA asked if MORENO had called CHS. Toll records for MIRANDA's prior telephones indicate that MIRANDA maintained regular telephone contact with MORENO on MORENO's contraband prison cell phones, as well as with other numbers believed to be used by VBS members.

   b. Telephone toll records and other information identifying subscribers for telephone numbers obtained through the pen register and trap and trace device on the **Subject Telephone** are relevant and material to this investigation as they will assist the

Investigating Agency with identifying other members of the organized crime conspiracy that MIRANDA is involved with. Based upon SA Roldan's experience, information identifying the subscribers for numbers captured by the pen register and the trap and trace devices, and subscriber information associated with any service changes, has yielded information in the past that is relevant and material to organized crime/narcotics trafficking investigations. Such information includes leads relating to: (1) the names of suspected suppliers, customers and other individuals who assist in the distribution of narcotics; (2) the location of "stash" houses where narcotics and drug proceeds are stored; (3) the identity of individuals involved in other illegal activity on behalf of the organization, such as collecting taxes or gun sales; (4) the locations of money transfer businesses used by members of the operation to transmit drug proceeds or taxes; (5) the geographic breadth of the suspected organization; and (6) the identities of potential organizers, leaders, managers, or supervisors of the suspected organization by examining the calling patterns revealed by the toll data. SA Roldan has advised me that, based upon his training and experience, one way to identify coconspirators is to evaluate the pattern of calls and to obtain information identifying subscribers for calls made to and from the **Subject Telephone Number,** which could belong to potential co-conspirators, and then to conduct an investigation concerning those individuals. Based upon the subscriber information, SA Roldan would also direct other investigators to conduct surveillance at the addresses and determine if criminal activity was occurring there, which could yield potential names of co-conspirators and potential narcotics storage

locations used by the organization. Obtaining the subscriber name, address, date of birth, social security number, driver's license information, contact names and numbers, employment information, and method of payment is critical to accurately identifying such subscribers because, among other things: (1) if the subscriber name is a common one and/or the subscriber address is not current, it can be difficult to accurately identify the subscriber without a date of birth, driver's license or social security number, especially in an area with a large population such as the Central District of California; (2) if the subscriber name and address is fictitious, which frequently is the case when criminals purchase telephones, all or part of the remaining identification information may be truthful and help identify the subscriber or lead to identifying other coconspirators; (3) by accurately identifying subscribers using the above-requested information, agents can eliminate innocent individuals as targets.

   c. Additionally, records or other information (*i.e.*, toll information and/or call detail records) pertaining to the subscriber of the **Subject Telephone Number** are important in establishing a pattern of activity for the targets, including whom the targets call before and after a significant event. This information assists the Investigating Agency in determining the full extent of the conspiracy and identifies other members of the conspiracy. The government is requesting historical records from May 1, 2016, to obtain information about MIRANDA's earliest usage of the **Subject Telephone Number**, which can assist in establishing additional associates of MIRANDA as yet unknown.

8. Accordingly, based upon the above proffer, and pursuant to 18 U.S.C. §§ 2703(c)(1)(B) and 2703(d), because there are reasonable grounds to believe that such information is relevant and material to the ongoing investigation, I further request that the Court issue an order requiring the providers listed in the proposed order, lodged concurrently herewith, and any other person or entity providing wire or electronic communications service in the United States whose assistance may facilitate execution of the order, to disclose upon oral or written request by Special Agents of the Investigating Agency the information set forth above.

D. REQUEST THAT ORDER PRECLUDE NOTICE AND THAT APPLICATION AND ORDER BE FILED UNDER SEAL

9. Based upon the information provided in this application, I believe disclosure of the requested court order may result in flight from potential prosecution or the destruction of or tampering with evidence, or may otherwise seriously jeopardize the investigation. Therefore, pursuant to 18 U.S.C. §§ 2705(b) and 3123(d), I request that this application and order be sealed and that the Court direct the local, long distance, and wireless carriers listed in the proposed order, any internet service provider or other electronic communications provider providing voice-over IP telephony,[13] <u>and any other</u> local, long distance, or wireless carrier servicing the

---

[13] Voice-over Internet Protocol telephony, also called Voice-over IP or VoIP, is essentially a type of hardware and software that allows people to use the internet as a transmission medium for telephone calls. In general, this means sending voice information in the form of digital packets of information rather than sending it through the traditional public switch telephone network. Like a pen register or trap and trace on a telephone, a pen register or trap and trace for information transmitted via VoIP will not disclose the contents of the call.

**Subject Telephone Number** who is obligated by the order to provide assistance to the Applicant, not to disclose in any manner, directly or indirectly, by any action or inaction, to the listed subscriber(s) for the **Subject Telephone Number**, the occupant of said premises, the subscribers of the incoming calls to or outgoing calls from the **Subject Telephone Number**, or to any other person, the existence of this order, in full or redacted form, of the pen register or trap and trace devices, or of this investigation, unless otherwise ordered by this Court.

    10. I further request that the identity of any targets of the investigation may be redacted from any copy of the order served on any service provider or other person, and that this order and application be SEALED until otherwise ordered by the Court.

    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on May 26, 2016, at Los Angeles, California.

JENNIFER CHOU
Assistant United States Attorney

14